UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| MUNSON HARDISTY, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 3:15-CV-547-TAV-DCP ) |
| LEGACY POINTE APARTMENTS, LLC, | ) ) |
| Defendant. | ) |

# MEMORANDUM OPINION

This matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on June 9, 2023 [Doc. 257], in which Judge Poplin recommends that the Court grant in part and deny in part Plaintiff's Motion to Alter or Amend the Judgment to Award Plaintiff Prejudgment Interest [Doc. 250]. Defendant objected and filed a motion for *de novo* determination of the R&R [Doc. 258], and plaintiff responded [Doc. 261].[1] While defendant's motion for *de novo* review is **GRANTED**, its objections [Doc. 258] are **OVERRULED**, and the Court **ACCEPTS** and **ADOPTS** the R&R in whole [Doc. 257]. Plaintiff's motion to alter or amend the judgment [Doc. 250] will be **GRANTED in part** and **DENIED in part**.

---

[1] Under this Court's Local Rules, "any reply brief and accompanying material shall be served and filed no later than 7 days after the service of the answering brief." E.D. Tenn. L.R. 7.1(a). Here, plaintiff filed its response to defendant's objections on July 6, 2023 [Doc. 261], and defendant untimely filed a reply brief on July 18, 2023 [Doc. 262]. Despite its untimeliness, the Court has considered the arguments made in defendant's reply brief, which are largely duplicative of those arguments made in its objections.

## I. Background

The Court finds that the "Background" section contained in the R&R adequately details the relevant factual background in this case. Moreover, neither party has raised an objection to the factual basis contained in the R&R. *See Smith v. Detroit Fed'n of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987) (stating that "only those specific objections to the magistrate's report made to the district court will be preserved for appellate review"). Consequently, the Court hereby adopts and incorporates the "Background" section in the R&R [Doc. 257, pp. 1–3].

In the R&R, Judge Poplin recommends that prejudgment interest be awarded to plaintiff. Specifically, she recommends that plaintiff be awarded 10% on the unjust enrichment claim and 5% on the quantum meruit claim from the filing of the complaint to the entry of judgment, minus the delay in this case of 553 days.

In making her recommendations, Judge Poplin considered each of the equitable factors relevant to determining whether prejudgment interest should be awarded. Judge Poplin first analyzed the promptness in the commencement of this lawsuit and found that the two explanations offered by plaintiff for why it waited to file the complaint were not sufficient reasons for delay. Thus, she recommended that prejudgment interest begin to accrue on December 10, 2015, when plaintiff filed its complaint.

Second, Judge Poplin considered any unreasonable delay or abusive litigation tactics present in this case. After reviewing the docket in this matter in terms of the asserted delays, Judge Poplin recommended that the temporal scope of plaintiff's prejudgment

interest award be limited to some extent. Specifically, she recommended that based on the delays caused by defendant's motion practice and the stays of the case that were necessitated by those motions, any delays associated with the litigation of motions should not be excluded from the prejudgment interest award. At the same time, however, Judge Poplin recommended that given the unusual circumstances of the pandemic, prejudgment interest should not be awarded from November 14, 2019, i.e., the day after the mediator filed his report, to May 19, 2021, i.e., the day before the Court lifted the stay, which totals to 553 days.

Third, Judge Poplin analyzed the certainty of the existence of the underlying obligation and the amount. She found that plaintiff has shown the existence of an underlying obligation and an ascertainable amount. Judge Poplin pointed out that contrary to defendant's assertion, it is the obligation that must be certain, not the amount that the jury awarded. She analyzed the testimony presented at trial by Robert Brown ("Brown") regarding the cost certification for the construction project, which complied with the U.S. Department of Housing and Urban Development's ("HUD") regulations, and found that the cost certification made the obligation ascertainable [*See* Doc. 257, p. 17]. In addition, she found that defendant's defense does not defeat plaintiff's entitlement to prejudgment interest.

Judge Poplin further considered the parties' disagreement as to whether plaintiff's transfer of its membership interest was voluntary and formed part of the jury award. She found that even if she agreed with defendant that plaintiff's transfer of its interest was not

part of the unjust enrichment claim, such would not mandate a denial of prejudgment interest. Judge Poplin explained that there was a transfer of property, and whether voluntary or involuntary, plaintiff's transfer of its membership interest in defendant improved defendant's position.

Fourth, Judge Poplin analyzed whether plaintiff had been previously compensated for the lost time value of its money or property. She concluded that the jury found in favor of plaintiff on its claims for quantum meruit and unjust enrichment, and there was no evidence that plaintiff had been previously compensated for the lost time value of its money in relation to those claims.

Finally, Judge Poplin considered the rate of prejudgment interest to award for each of plaintiff's claims. She recommended that in light of the equitable nature of prejudgment interest, plaintiff should be awarded 5% on the quantum meruit claim and 10% on the unjust enrichment claim. In support, Judge Poplin stated that because a claim for quantum meruit recognizes goods and services plaintiff provided for which it was not paid and because there was an economic downturn at the time it provided those goods and services, 5% is an appropriate interest rate. She continued by stating that because plaintiff's unjust enrichment claim is related to the transfer of its membership interest, plaintiff should be awarded 10% on that claim in light of the rapid appreciation of property during the relevant time. She explained that although the parties dispute whether the jury award was based on plaintiff's transfer of its membership interest, she noted plaintiff's reply where it explained how defendant had been unjustly enriched through the transfer of its membership interest.

4

## II. Standard of Review

The Court reviews *de novo* those portions of the R&R to which defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). Accordingly, defendant's motion for *de novo* determination of the issues raised in its objections [Doc. 258] is **GRANTED**, and the Court considers the R&R, plaintiff's motion, the parties' underlying and supporting briefs, the evidence on the record, defendant's objections, and the parties' underlying and supporting briefs to those objections, all in light of the applicable law.

## III. Analysis

Defendant has raised four objections to Judge Poplin's R&R [Doc. 258]. However, before addressing those objections, the Court notes that to the extent defendant's objections to Judge Poplin's recommendations are merely resubmission of the arguments in its response to plaintiff's motion [*Compare* Doc. 252 *with* Doc. 260], such are not proper objections. Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)). If "objections merely restate the arguments asserted in [a party's] earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)). Thus, to the extent that

5

defendant's objections merely "copy and paste" the arguments presented to the magistrate judge, its objections are **OVERRULED**.

### A. Applicable Judgment for Purposes of Calculating Prejudgment Interest

Defendant first argues that prejudgment interest should be calculated from the date of the filing of the complaint to entry of the original judgment, minus 553 days for delays in this case [Doc. 258, p. 1]. It contends that Judge Poplin did not explicitly state that interest should be calculated until the date of the original judgment rather than until the date of any amended judgment that may be entered [*Id.*]. Plaintiff responds that it is apparent from the R&R that the term "Judgment" refers to the judgment already entered in September 2022 and not any amended judgment that may be entered in the future [Doc. 261, pp. 8–9].

The Court agrees with plaintiff that there is nothing in the R&R to indicate that Judge Poplin recommends that prejudgment interest accrue until an amended judgment is entered. Within the "Background" section of the R&R, Judge Poplin cites to Doc. 240, which is the judgment that was entered in this case on September 29, 2022, and states that "[t]he Court denied Plaintiff's claims for equitable relief" [Doc. 257, p. 3]. Immediately after, she states, "Following entry of the Judgment, Plaintiff filed the instant motion" [*Id.*]. She continues to reference the "Judgment" throughout the R&R, including in her conclusion where she recommends that prejudgment interest accrue "from the filing of the Complaint to entry of *Judgment*, minus the delay in this case (i.e., 553 days)" [*Id.* at 24 (emphasis added)]. Thus, the Court does not construe Judge Poplin's statement as

recommending anything other than prejudgment interest accruing until the date judgment was entered on September 29, 2022 [Doc. 240]. And the Court will calculate prejudgment interest in that manner. Accordingly, defendant's first objection is **OVERRULED**.

### B. Appropriate Rate of Prejudgment Interest

Second, defendant objects to Judge Poplin's imposition of a 5% interest rate on the claim for quantum meruit and a 10% interest rate on the claim for unjust enrichment [Doc. 258, p. 2]. Defendant argues that although Judge Poplin acknowledges that the interest rate should be reduced due to the economic environment and to avoid a windfall to plaintiff, she does not provide a basis for a rate of 5% [Doc. 260, p. 5]. Defendant then restates its arguments made in response to plaintiff's motion to argue that the interest rate should be no more than 2% [*Id.* at 5–6]. In addition, defendant argues that plaintiff has failed to present any evidence to establish its loss of use of money, such as the amount of interest plaintiff could have earned or its average cost of debt capital [*Id.* at 6].

Plaintiff responds that Judge Poplin did provide a basis for finding a rate of 5% interest to be appropriate on the quantum meruit claim [Doc. 261, p. 6]. Plaintiff states that the R&R includes multiple authorities discussing that determination of the appropriate rate is an equitable inquiry that depends on the circumstances of a particular case [*Id.*]. In addition, plaintiff points out that Judge Poplin recommended a rate of 10% on its unjust enrichment claim due to the equities of the case, and she cited evidence of the significant increase in the value of the property, which defendant has enjoyed, as well as interest rates ranging from 10% to 13% on promissory notes admitted at trial [*Id.*]. Plaintiff also points

7

out that defendant's cited authorities for its suggested rate of 2% are before the time period during which Judge Poplin recommended prejudgment interest be awarded, and defendant fails to demonstrate how these data points control [*Id.*]. Plaintiff states that the R&R reflects that Judge Poplin took into account the economic climate during the relevant time frame in reducing the recommended rate to 5% for plaintiff's quantum meruit claim [*Id.*].

Plaintiff further responds that it did present evidence, which was cited in the R&R, as to the returns it could have made on the property and the course of dealing among the parties and their principals with respect to interest rates on loans [*Id.*]. Plaintiff contends that due to defendant's wrongful conduct, not only did plaintiff not receive payment for the value of its work, but it was also deprived of enjoying its proportionate share of the enhanced value of the real property that the goods and services bestowed [*Id.* at 6–7]. Plaintiff maintains that the appreciation of the property is appropriately considered in evaluating the circumstances of the case to arrive at a fair and equitable interest rate [*Id.* at 7].

Plaintiff continues that even if the jury did not award damages for the loss of plaintiff's membership interest, it would still be reasonable to look to the rate of return enjoyed by defendant based on the appreciated value of the real property as being indicative of the time value of plaintiff's loss of use of money [*Id.*]. Plaintiff also notes that defendant provides no authority that requires a moving party to present any particular type of evidence as to the interest rate that should be awarded [*Id.*]. Plaintiff then cites to case law demonstrating that courts regularly award prejudgment interest at the statutory 10% rate in

8

order to fully compensate a plaintiff, including during the same time frame encompassed by this litigation [*Id.* at 7–8].

In Tennessee, "Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, . . . *may* be awarded by courts . . . in accordance with the principles of equity at *any rate* not in excess of a maximum effective rate of ten percent (10%) per annum[.]" Tenn. Code Ann. § 47-14-123 (emphasis added). The language of this statute gives the Court discretion in deciding whether to award prejudgment interest and, if such an award is made, what rate to set within the limit imposed.

Here, the Court disagrees with defendant that Judge Poplin provided no basis for her recommendation of a 5% interest rate for plaintiff's quantum meruit claim. In the R&R, Judge Poplin cited several sources supporting her conclusion that "5% is a more appropriate interest rate in light of the economic climate during this time" [Doc. 257, pp. 22–23]. In considering theses sources, Judge Poplin's proposed rate was recommended in accordance with Tennessee law, as the rate does not exceed the maximum effective rate of 10% per annum, and was made with the principles of equity in mind [*Id.*]. *See* § 47-14-123. As a result, the Court will not disturb Judge Poplin's recommended rate of 5%.

In support of its argument that 2% is a more appropriate rate for both the quantum meruit and unjust enrichment claims, defendant argues verbatim the same authority that was presented to Judge Poplin [*Compare* Doc. 252, pp. 13–14 *with* Doc. 260, pp. 5–6]. Thus, because these authorities were already presented to and considered by Judge Poplin,

9

the Court declines to consider them in reviewing the R&R's recommendations where no error in Judge Poplin's consideration of these authorities has been alleged. Further, as with her recommendation of 5%, Judge Poplin's recommendation of 10% as to the unjust enrichment claim was recommended with the principles of equity in mind [*See* Doc. 257, pp. 23–24], and the rate does not exceed the maximum effective rate of 10% per annum. *See* § 47-14-123. As a result, the Court will not disturb Judge Poplin's recommended rate of 10%.

As to defendant's argument that plaintiff has not presented any evidence to establish the loss of use of money, defendant has already presented the same argument to Judge Poplin [*See* Doc. 257, pp. 19–20]. Judge Poplin rejected the argument, stating, "prejudgment interest is a 'matter of equity, rather than [] a form of incidental damages'" [*Id.* at 19 (quoting *Stamtec, Inc. v. Anson Stamping Co.*, 346 F.3d 651, 659 (6th Cir. 2003))."]. The Court agrees.

Relevant case law supports the proposition that a plaintiff is not required to present evidence supporting a specific rate of interest on its claim in order to be awarded prejudgment interest. *See Reed v. Cracker Barrel Old Country Store, Inc.*, 171 F. Supp. 2d 751, 768–69 (M.D. Tenn. 2001); *see also Mabey v. Maggas*, No. M2006-02689, 2007 WL 2713726, at *11 (Tenn. Ct. App. Sept. 18, 2007) ("We find no authority for the proposition that a plaintiff must present testimony or other proof demonstrating what he considers to be a 'reasonable rate.'"). Instead, all that is required is that the court decide "whether the award of prejudgment interest is fair, given the particular circumstances of

the case." *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Even if a plaintiff were required to present such evidence, here, plaintiff has presented evidence of the rate to which it believes it is entitled, which Judge Poplin considered in making her recommendations [*See* Doc. 257, p. 23].[2] Accordingly, defendant's second objection is **OVERRULED**.

### C. Rate of Interest for Unjust Enrichment Claim

Third, defendant objects to Judge Poplin's basis for imposing a 10% interest rate on plaintiff's unjust enrichment claim [Doc. 258, p. 2]. Defendant argues that there is nothing in the record to support a finding that the jury's verdict on the claim for unjust enrichment relates to the transfer of plaintiff's membership interest [Doc. 260, p. 6]. Defendant, once again, repeats its argument almost verbatim that was made in its response to plaintiff's motion [*Id.*]. It contends that because it prevailed on plaintiff's contract claim and RICO claim, the jury found that plaintiff was not harmed at all due to the transfer of its membership interest [*Id.*].

Moreover, defendant maintains that plaintiff asserted at trial that it was entitled to $3.2 million for the membership interest it transferred to Harold Moore [*Id.* at 7]. Defendant argues that the amount awarded by the jury is not related to this amount, and it

---

[2] Defendant cites *Am.'s Collectibles Networks, Inc. v. Sterling Com. (Am.), Inc.* for the proposition that plaintiff is required to present evidence to establish the loss of use of money [Doc. 260, p. 6]. 819 F. App'x 397 (6th Cir. 2020). However, as pointed out by plaintiff [Doc. 261, p. 7], this case does not support such a proposition. Instead, the Sixth Circuit found that the district court abused its discretion where it found certain evidence regarding the cost of debt capital to be uncontroverted, when it was in fact contested. *Id.* at 405.

11

is pure speculation as to the basis of the award for this claim [*Id.*]. However, in considering the evidence presented at trial and the most logical reading of the verdict, defendant asserts that the claim for unjust enrichment must relate to plaintiff's claim that defendant was unjustly enriched by goods and services provided by subcontractors that were not paid by defendant [*Id.*]. As a result, defendant argues that the value of such goods and services is unrelated to the increase in value of the property, and thus, the rate of prejudgment interest on the claim for unjust enrichment should be the same as that provided for the claim for quantum merit, i.e., 2% [*Id.*].[3]

Plaintiff responds that it presented evidence at trial that it transferred its membership interest, which was part of its compensation in the form of "sweat equity," due to duress caused by defendant refusing to pay plaintiff for its labor and materials [Doc. 261, p. 5]. Plaintiff maintains that defendant was unjustly enriched by having the value of its real property enhanced by plaintiff's work and contributed equity [*Id.*]. Plaintiff points to Judge Poplin's finding that regardless of whether the transfer was voluntary or involuntary,

---

[3] The Court disagrees with defendant that the prejudgment interest rate should be the same for the quantum meruit and unjust enrichment claims because they are similar claims under Tennessee law [Doc. 262, pp. 8–9]. First, the elements of these individual claims are different. *See Patterson v. Patterson*, No. M2016–00886, 2017 WL 1433310, at *9 (Tenn. Ct. App. Apr. 20, 2017) ("While unjust enrichment and quantum meruit may be synonymous[,] the elements of each claim, as defined by our supreme court, remain distinct."). In addition, "[a] party may [] state as many separate claims or defenses as he or she has, regardless of consistency," so long as there is not double compensation for a single wrong. *See Com. Painting Co. v. Weitz Co.*, No. W2019-02089, 2022 WL 737468, at *8 (Tenn. Ct. App. Mar. 11, 2022) (quoting Tenn. R. Civ. P. 8.05(b)). Here, there are two wrongs at issue: loss of plaintiff's membership interest and loss of the value of the goods and services plaintiff provided to defendant without payment.

12

"Plaintiff's transfer of its membership interest in Defendant improved Defendant's position" [*Id.*].

The Court first restates its conclusion that it will not disturb Judge Poplin's recommended rate of 10% because it was recommended with the principles of equity in mind [*See* Doc. 257, pp. 23–24] and does not exceed the maximum effective rate of 10% per annum. *See* Tenn. Code Ann. § 47-14-123. Second, plaintiff has cited several authorities demonstrating that it is not out of the ordinary for courts to award 10% prejudgment interest in order to fully compensate a plaintiff [Doc. 261, pp. 7–8]. *See Teague v. Kidd*, No. E2011–02363, 2012 WL 5869637, at *10 (Tenn. Ct. App. Nov. 21, 2012) ("[T]he court's decision to award prejudgment interest at a statutory rate of 10 percent was wholly within the court's discretion.").

Third, "a plaintiff may recover for unjust enrichment against a defendant who receives *any* benefit from the plaintiff if the defendant's retention of the benefit would be unjust." *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005). The Court agrees with Judge Poplin that plaintiff transferred its interest in property, and the transfer improved defendant's position. In contrast to defendant's contention, there is evidence in the record from which the jury could have concluded that the claim for unjust enrichment relates to the transfer of plaintiff's membership interest. For example, a witness for plaintiff testified at trial that plaintiff's interest in defendant was transferred under duress and for hardly any consideration so that the interest "could be included in the cost of the project and receive the benefit of an increased mortgage" [Doc. 228, pp. 195–96,

13

230–31]. This is evidence from which the jury could have reasonably concluded that defendant benefitted from the transfer and retention of the interest would be unjust, thereby leading to an award of damages for the transfer of plaintiff's interest in relation to its unjust enrichment claim. For all these reasons, defendant's third objection is **OVERRULED**.

### D. Certainty of the Existence of an Underlying Obligation and the Amount Due

Fourth, defendant objects to Judge Poplin's finding that there was certainty of the existence of an underlying obligation and certainty of the amount due [Doc. 258, p. 2]. Defendant argues that Judge Poplin failed to acknowledge that it remains unclear as to the basis for the award by the jury, and therefore, it is impossible to determine that there is a certainty of the existence of an underlying obligation or a certainty of the amount due [Doc. 260, p. 8]. Instead, defendant contends that there is no basis for finding that the award related in any way to the membership interest sought by plaintiff through this litigation because the jury entered judgment in favor of defendant on the contract claim and the RICO claim, both of which sought recovery for the loss of the membership interest [*Id.*]. If anything, defendant maintains that the jury awarded plaintiff for work that was not approved by HUD but was performed by plaintiff's subcontractors [*Id.*].

Defendant continues that it is unclear whether the cost certification for the project makes the amount ascertainable [*Id.*]. Defendant states that Brown testified that he was relieved of his obligation to reissue the cost certification because the funds were being paid through escrow, and he could not recall the basis for determining the amount of the construction payable [*Id.*; Doc. 262, p. 5]. In addition, defendant states that the

14

certifications were for funds spent through the HUD contract, including extras that were approved by HUD [Doc. 258, pp. 8–9]. Defendant asserts that because the funds at issue were not pursuant to the HUD contract or extras that were approved by HUD, the cost certification does not make the obligation ascertainable [*Id.* at 9].

Plaintiff responds that Judge Poplin expressly rejected defendant's argument as to certainty by explaining that under a decision of the Tennessee Supreme Court, it is the obligation that must be ascertainable, not what the jury ultimately awarded [Doc. 261, p. 4]. In other words, the question is not whether a jury award can be predicted with certainty, but rather, whether the underlying obligation and amount are ascertainable by computation or by any recognized standard of valuation [*Id.*].

Plaintiff then explains that at trial, it prevailed on its claims for quantum meruit and unjust enrichment [*Id.*]. It states it was deprived of payment for the fair value of the labor and materials that were expended in connection with the work in excess of the construction contract amount, which caused plaintiff to forfeit its membership interest in defendant [*Id.*]. Plaintiff contends that Brown testified that he accounted for all the costs that went into the construction project, all of which were to the benefit of defendant [*Id.*]. Plaintiff clarifies that even though Brown certified the costs and not payment of the costs, the underlying obligation and amount are ascertainable by computation based on the cost certification [*Id.* at 5]. Plaintiff further responds to defendant's argument regarding the transfer of its membership interest in the same manner as it responded to defendant's third objection [*Id.*].

15

"[P]rejudgment interest is allowed when the amount of the obligation is certain, or can be ascertained by a proper accounting[.]" *Myint*, 970 S.W.2d at 927. However, "[t]he uncertainty of either the existence or amount of an obligation does not *mandate* a denial of prejudgment interest, and a trial court's grant of such interest is not automatically an abuse of discretion, provided the decision was otherwise equitable." *Id.* at 928. This is because "[t]he certainty of the plaintiff's claim is but one of many nondispositive facts to consider when deciding whether prejudgment interest is, as a matter of law, equitable under the circumstances." *Id.*; *see also Poole v. Union Planters Bank, N.A.*, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (reciting the six equitable factors courts should consider in determining whether to award prejudgment interest).

Here, defendant has objected to only two of the six factors utilized by Judge Poplin to award prejudgment interest, i.e., the certainty of the existence of the underlying obligation and the certainty of the amount in dispute [*See* Doc. 260]. Because the Tennessee Supreme Court has stated that the uncertainty of either of these factors does not mandate a denial of prejudgment interest, the Court is not required to entertain defendant's objection in order to award prejudgment interest, as Judge Poplin found that the other four factors also weigh in favor of awarding prejudgment interest. Not to mention, there is a presumption in favor of granting prejudgment interest under Tenn. Code Ann. § 47-14-123. *See Stamtec*, 346 F.3d at 660 (remanding to the district court "[i]n light of the Tennessee Supreme Court's presumption in favor of granting prejudgment interest").

16

Nonetheless, the Court finds that defendant's argument is without merit. Defendant argues that because the basis for the jury award is unclear, there can be no certainty as to the existence of an underlying obligation or as to the amount due [Doc. 260, p. 8]. However, as pointed out by Judge Poplin, it is the amount of the obligation which must be certain, not the amount that the jury awarded. *See Myint*, 970 S.W.2d at 927. After the jury found in favor of plaintiff on two of its claims, the jury awarded $350,000 for the quantum meruit claim and $930,000 for the unjust enrichment claim [Doc. 240]. The underlying basis for the jury's decision in awarding those amounts is inapposite to the inquiry on prejudgment interest. As succinctly stated by plaintiff, "if a plaintiff were required to predict with mathematical accuracy to the penny the amount that a jury might award, there *never* would be any prejudgment interest awarded" [Doc. 255, p. 7].[4]

As to defendant's argument that there is no basis for finding that the jury award relates to the membership interest transferred by plaintiff, the Court references and incorporates its analysis from Part III.C, *supra*. For those same reasons, the Court concludes that there was a basis for the jury to award damages for the transfer of plaintiff's interest in relation to its unjust enrichment claim.

---

[4] Defendant cites *Powell v. McDonnell Ins., Inc.*, where the court declined to award prejudgment interest because the "claim for damages remained uncertain throughout the course of the trial" [Doc. 260, p. 8]. No. 02A01-9608, 1997 WL 589232, at *11 (Tenn. Ct. App. Sept. 24, 1997). However, *Powell* is inapposite to defendant's argument because there was no jury award at issue in that case, and the court only analyzed the certainty of the claim for damages, i.e., the underlying obligation. *Id.* Here, plaintiff's claim for damages was certain throughout the course of the trial, as defendant admits that plaintiff sought $3.2 million for the value of its membership interest in defendant and $2.1 million for the claims for extra work [Doc. 260, p. 9].

17

Finally, as to defendant's argument regarding Brown and his testimony about the cost certification, the Court finds that these amounts were ascertainable by a proper accounting. "[T]he test is whether the amount of damages is ascertainable by computation or by any recognized standard of valuation. This is true even if there is a dispute over monetary value or if the parties' experts compute differing estimates of damage." *Myint*, 970 S.W.2d at 928.

A claim for quantum meruit "enable[s] parties who have provided goods and services to another[,]" without a contract, "to recover the reasonable value of these goods and services[.]" *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995). As stated by Judge Poplin, Brown testified at trial as to the cost certification that he performed for the construction project, which complied with HUD regulations [Doc. 230, pp. 11–12]. The cost certification outlined the costs associated with the construction project, including the claims for extra work, i.e., the reasonable value of the goods and services provided by plaintiff to defendant [*Id.* at 78, 102].[5] And the Court agrees with plaintiff that just because Brown did not certify *payment* of the costs does not mean he did not certify the costs associated with the project [*See id.* at 106–08]. Thus, because Brown's cost certification complied with a recognized standard of valuation, i.e., HUD regulations, the obligation underlying plaintiff's claim for quantum meruit was ascertainable. This is true despite the

---

[5] Defendant argues that the claims for extra work were not issued pursuant to the HUD contract or extras that were approved by HUD [Doc. 260, p. 9; Doc. 262, p. 7]. However, defendant fails to cite support demonstrating that the claims for extra work were not included in the cost certification, and evidence on the record supports the opposite conclusion [*See* Doc. 230, pp. 11–12, 14–15, 78, 102].

18

fact that defendant disagrees with Brown's cost certification. *See Liberty Constr. Co. v. Curry*, No. M2019-00951, 2020 WL 6158461, at *14 (Tenn. Ct. App. Oct. 21, 2020) (citing *Myint*, 970 S.W.2d at 929) ("The fact that the values were contested by the parties did not preclude an award of prejudgment interest.").

In light of the foregoing, defendant's fourth objection is **OVERRULED**.

### E.     Miscalculation of Days Excluded

Based on its own review of the docket in this case, the Court has discovered an error in the R&R's recommendation of excluding 553 days from the calculation of prejudgment interest. In particular, the Court noticed the dates Judge Poplin used to calculate the delay in this case were "from November 14, 2019 (the date after the mediator filed his report), to May 19, 2021, (the day before the Court lifted the stay)" [Doc. 257, p. 11]. However, the stay at issue was lifted on May 18, 2021 [Doc. 156], which means the day before would have been May 17, 2021. The day after the mediator filed his report, i.e., November 14, 2019, is correct because the report was initially filed on November 13, 2019 [Doc. 154], and an amended report fixing an error was filed the next day [Doc. 155].

Accordingly, the delay in this case will be calculated from November 14, 2019, i.e., the day after the mediator filed his report [Doc. 154], to May 17, 2021, i.e., the day before the Court lifted the stay [Doc. 156]. Using these dates, the delay in this case totals 551 days, which is the time that will be excluded from calculating prejudgment interest.

19

## IV. Conclusion

While defendant's motion for *de novo* review is **GRANTED**, defendant's objections [Doc. 258] are **OVERRULED**, and the Court **ACCEPTS** and **ADOPTS** the R&R in whole [Doc. 257]. Plaintiff's motion to alter or amend the judgment [Doc. 250] will be **GRANTED in part** and **DENIED in part**. A separate order and amended judgment will enter.

ENTER:

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE